DUPLICATING SUPPLY COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duplicating Supply Co. v. Commissioner
Docket No. 7409-92
United States Tax Court
T.C. Memo 1993-451; 1993 Tax Ct. Memo LEXIS 460; 66 T.C.M. (CCH) 853; September 28, 1993, Filed *460 Decision will be entered under Rule 155. For petitioner: Vernon D. Hyde. For respondent: Donald E. Edwards. PETERSON
PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioner's Federal income tax for the taxable years 1988 and 1989 in the following amounts: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6662
1988
$ 2,676
$ 134
--
1989
2,676
--
$ 535
The sole issue for decision is whether rental payments made by petitioner during each of the years 1988 and 1989 were based on the fair rental value of the property leased and therefore deductible under section 162(a)(3). Some of the facts have been stipulated and are so found. The stipulation of facts with attached exhibits is incorporated herein by reference. Petitioner is a corporation organized under the laws of Oklahoma. At the time the petition *461 was filed in this case petitioner's principal place of business was in Oklahoma City, Oklahoma. During the years in issue petitioner's stock was equally owned by Bill Pruegert and Elinor Pruegert, husband and wife. Mr. Pruegert was also the president of petitioner. During the time period herein, petitioner's primary business was selling printing supplies and equipment to print shops, schools, and churches. Prior to 1984, petitioner rented the necessary building space from an unrelated party to carry on its business. During August 1984 Mr. Pruegert purchased two adjoining buildings at 515-517 North Western Avenue, Oklahoma City, Oklahoma, (hereinafter 515 and 517 or North Western Avenue) with the intent of renting the property to petitioner. The square footage of both buildings totals 5,200 square feet. The building at 515 is approximately 1.5 times the size of 517. Mr. Pruegert purchased the property because petitioner's business was growing and additional space was needed to carry on its business. The property was owned by an estate and was listed for sale at $ 65,000. After some negotiations, Mr. Pruegert purchased the property for $ 48,000. After the purchase petitioner *462 made some minor improvements which cost approximately $ 6,000. After the purchase petitioner moved its business into 515 and 517 as a tenant. During the years at issue the property had a fair market value of $ 54,000. Commencing in 1984 to the present date, petitioner paid Mr. Pruegert an annual rent of $ 23,600. In addition, petitioner paid for the necessary insurance coverage and the real estate taxes. The amount paid was arbitrary in that Mr. Pruegert decided on an annual rental payment without making any investigation to determine the fair rental value of the property involved. Respondent contends that the rental payments paid by petitioner to Mr. Pruegert during the years involved were in excess of an amount that would have been paid by an unrelated party in an arm's-length rental agreement because of Mr. Pruegert's control over petitioner. Respondent argues that the fair rental value during each of the years in dispute was not in excess of $ 1 per square foot. Petitioner admits it was controlled by Mr. Pruegert, but contends that a fair and reasonable rent was paid. The rental payments made during each year amounts to approximately $ 4.50 per square foot. Both parties *463 presented expert testimony to support their respective positions. Petitioner's expert witness, Mr. Kordic, did not perform a complete appraisal of the property, but limited his examination to determining the "market rent" for the property. Mr. Kordic considered five separate properties which he felt were comparable to the North Western Avenue property. Mr. Kordic determined that the fair market rent for the property was between $ 4 and $ 4.50 per square foot. The properties at 515 and 517 are two connected buildings with 5,200 square feet of space. Of the total space, one half is suitable for office and retail use and the other one half is suitable for storage use. The property is situated in the middle of the block with a small amount of parking off the alley behind 517. Four of the properties considered by Mr. Kordic as comparables were all much larger, had off-street parking and the buildings were primarily suitable for retail use. In addition, the properties were 1 to 3 miles from the North Western Avenue property. The fifth property considered by Mr. Kordic, the Sharp & Nichols Music Co. property, was the most comparable to 515 and 517 because the building size is almost *464 identical to and is in close proximity to the North Western Avenue property. This property was leased during the years at issue at $ 4.97 per square foot and was under a 5-year lease which had been entered into in prior years. The building was situated on a 14,000 square foot lot. The tenant purchased the property in April 1989 for a purchase price of $ 112,500. There is no evidence to show how much of the property was suitable for retail use and storage use. Respondent points out that Mr. Kordic failed to consider 513 North Western Avenue (hereinafter 513), which is adjacent to the property under consideration. The property at 513 was built at the same time as 515, and is similar in size and construction, except that the total space at 513 was only suitable as storage space. During 1988 and 1989, 513 was rented in an arm's-length transaction for $ 1 per square foot. In 1990, Mr. Pruegert purchased 513 to be used as a drive-in garage for customers of petitioner's retail printing business which was located in the adjoining property at 515 and 517. Mr. Kordic did not consider 513 since it was used solely as storage space. He agrees that $ 1 per square foot would be a reasonable *465 rent for property which is only suitable for storage. Respondent's expert witness, Mr. Shukla, testified that the properties used by petitioner were not comparable to the North Western Avenue property because of their location and because most of the properties were on corner lots with more land and with better customer access. Mr. Shukla used the asset capitalization method to determine the fair market rent of the North Western Avenue property. Respondent's expert also considered 513 and concluded that it was a better comparable to determine the fair market rent of the property than those properties used by petitioner's expert because of the proximity of 513 to 515 and 517. Using the asset capitalization method, Mr. Shukla determined the annual fair market rent to be $ 5,750 for the years at issue. To arrive at this figure petitioner's expert used a capitalization rate of 12.5 percent and $ 46,000 as the fair market value of the property, which was based on the erroneous assumption that the purchase price of the property was $ 46,000 rather than $ 48,000. Respondent now concedes that the fair market value of the property during the years involved was $ 54,000. Substituting *466 the corrected fair market value of the property in respondent's calculation produces an annual fair market rent of $ 6,772. In this case, because of the close relationship between petitioner and Mr. Pruegert, we must determine whether the amount of rent paid was in excess of what petitioner would have had to pay had he dealt at arm's length to lease the property. See . Petitioner has the burden of proving that the amount paid was based on the fair rental value of the property. Rule 142(a); . The parties agree that the best method of determining the fair rental value of the property would be to find similar rental property under lease during 1988 and 1989. Petitioner's expert contends that the properties he submitted in his report were comparable and should be accepted by the Court to determine the fair rental value. Respondent's expert does not agree that the properties used by petitioner were comparable to the North Western Avenue property. The only property that respondent's expert considered to be comparable was *467 513 because it was property of similar size and construction and adjoined 515 and 517. Although petitioner's expert identified five properties in his report as being comparable to 515 and 517, he relied primarily on the Sharp & Nichols property as being the most comparable. However, we question the comparability of this property because it has a much larger land area with 50 feet of on-site parking. The property was also subject to a 5-year lease which was executed prior to the years in issue. In addition, the property was sold in April of 1989 to the tenant for $ 112,500. Further, there is no evidence in the record as to the amount of available retail space in the building as compared to storage space. Mr. Kordic did not explain the bearing, if any, the above factors had on the fair rental value of the property during 1988 and 1989. Accordingly, we do not accept the Sharp & Nichols property as being a reliable comparable to the North Western Avenue property. We have found that 515 and 517 had a fair value of $ 54,000 during the years at issue. Based on this value the annual rent of $ 23,600 is approximately 44 percent of the fair market value of the property. We do not *468 believe that such a high rate of return on the value of the property was based on an arm's-length rental agreement. Petitioner suggests that since the property was purchased from an estate, it may have been purchased at less than its fair market value. Although petitioner's assumption is possible, there is no evidence to support this proposition. Mr. Pruegert, who purchased the property, did not testify that he believed that the property was purchased at a bargain price. Even if we were to accept that the fair market value of the property was its asking price of $ 65,000, the rate of return based on the amount of rent paid would be in excess of 36 percent, which is still an excessive rate of return for rental property. Based on the record in this case, we cannot determine a fair rental value by relying on either petitioner's attempt to show comparable rental properties or respondent's use of the asset capitalization method. When we find that the opinion of an expert is contrary to our judgment we are not bound by the expert's opinion. However, in our discretion we may use selected portions of the opinion. , *469 affd. without published opinion . As such, we will consider the testimony and the reports of the experts to the extent that it is helpful to the Court. Based on the evidence presented in this case, we find that the storage space of 515 and 517, which is approximately one-half of the total rental space, or 2,600 square feet, has a fair market rental value of $ 1 per square foot. This conclusion is based on the amount of rent paid for storage space at 513 during the years at issue, which was based on an arm's-length agreement. Petitioner's expert witness determined that the property at 515 and 517 had an average fair rental value of $ 4 to $ 4.50 per square foot. We find this conclusion to be completely without any support in the record. Petitioner's expert admitted that the fair rental value of the storage space was $ 1 per square foot. On this basis, after allocating $ 1 per square foot to the storage space, the remaining retail and office space would have to be valued at approximately $ 8 per square foot to arrive at petitioner's claimed rental value of $ 4 to $ 4.50 per square foot for the total property. We also reject *470 respondent's contention that the total space should be valued at $ 1 per square foot. In this case all of respondent's focus is on using a set formula to determine rental value rather than considering 513 which respondent admits is comparable rental property for storage space. This approach produces an obvious erroneous result in that respondent ends up by using the same value for both storage and retail space. Clearly, the retail and office space has more rental value than the storage space. Because of the lack of reliable support from either expert to determine fair rental value, we must use our best judgment considering the evidence available. . On this basis, we find that the 2,600 square feet of retail and office space has a fair rental value of $ 2.50 per square foot. We next consider the additions to tax for negligence for each of the years 1988 and 1989. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioner has the burden *471 of proof to show that the additions to tax should not be sustained by the Court. . The record shows that petitioner failed to make any reasonable investigation to determine what the fair market rent for the property should be or that the amount paid was in any way a reasonable amount. Because of the large amount of rent paid in comparison to the value of the property, petitioner had a clear duty to explain the circumstances of the unusually high payments. At the trial petitioner testified that he had no idea as to how the rent was determined. Based on the record petitioner has failed to meet his burden of proof on this issue. Accordingly, we sustain respondent's determination and find that petitioner is liable for the additions to tax for negligence. To reflect the foregoing, Decision will be entered under Rule 155.